UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

SEALED

FILED BY_____ D.C.

NOV 27 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

UNITED STATES OF AMERICA,

   Plaintiff,

      v.

FARHAN KHAN, in his individual capacity and as *de facto* owner of ALTITUDE PROCESSING, INC.; MELINDA PETIT-HOMME, in her individual capacity and as an officer of ALTITUDE PROCESSING, INC.; ALTITUDE PROCESSING, INC., a Florida corporation; ALTITUDE PROCESSING, INC., a Delaware corporation; JEREMY TODD BRILEY, in his individual capacity; RSC LLC, a Delaware Limited Liability company; RSC of Florida LLC, a Florida Limited Liability Company; YO! INC, a Nevada Corporation; CHRISTOPHER FOUFAS, in his individual capacity and as an officer of RSC LLC and YO! INC.; BRANDON HAHN, in his individual capacity and as an officer of RSC and YO! INC.,

   Defendants.

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIONS, AND OTHER EQUITABLE RELIEF

Plaintiff, the United States of America, by and through its undersigned attorneys, brings this complaint against Defendants and alleges the following:

## INTRODUCTION

1. The United States brings this action for a temporary restraining order, preliminary and permanent injunction, and other equitable relief pursuant to 18 U.S.C. § 1345 in order to enjoin the ongoing commission of criminal wire fraud and bank fraud in violation of 18 U.S.C. §§ 1343, 1344, and 1349. The United States seeks to prevent continuing and substantial injury to the victims of fraud, including the affected individuals, small businesses, and banks.

2. Defendants operate and conspire to operate a bank and wire fraud scheme that preys upon individuals and small businesses across the United States. The scheme involves obtaining victims' banking information without their consent and making recurring, unauthorized withdrawals from their bank accounts.

3. Since in or before 2017, Defendant Farhan Khan ("Khan") has operated and controlled companies through which the fraud is perpetrated. The scheme is currently operated through Altitude Processing, Inc. ("Altitude Processing"), which does business as Clear Marketing Agency. Altitude Processing purports to provide online marketing services to small businesses. In reality, small businesses charged by Altitude Processing never signed up for—or received—any services from Altitude Processing.

4. Defendant Melinda Petit-Homme ("Petit-Homme") is Khan's former classmate and business partner. Petit-Homme has participated in the fraud scheme by allowing Khan to operate Altitude Processing under her name in exchange for compensation. Petit-Homme is listed on Altitude Processing's incorporation documents and bank accounts. In a September 2017 email, Petit-Homme wrote to Khan, who she described as her "friend" and "business partner," that "Everything I own is because of you."

5. Defendant Jeremy Todd Briley ("Briley") is a "broker" who has partnered with Khan and Petit-Homme since at least 2017. In furtherance of the conspiracy, Briley seeks out relationships with banks and third-party payment processors to process victims' unauthorized charges for Altitude Processing.

6. Defendants RSC LLC ("RSC"), YO! Inc., and their executives Defendants Christopher Foufas ("Foufas") and Brandon Hahn ("Hahn") opened bank accounts used for the scheme and have knowingly processed unauthorized withdrawals from victims' bank accounts on behalf of Altitude Processing since at least September 2021.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under 18 U.S.C. § 1345 and 28 U.S.C. §§ 1331 and 1345.

8. The United States District Court for the Southern District of Florida is a proper venue for this action under 28 U.S.C. §§ 1391(b)(1) and 1391(c) because multiple defendants reside in or have their principal place of business in this District, victims of the scheme were defrauded in this District, and many of Defendants' actions giving rise to this action occurred in this District.

## PARTIES

9. Plaintiff is the United States of America.

10. Defendant Khan is a citizen and resident of Canada. In connection with the matters alleged herein, Khan transacts and has transacted business in this District and throughout the United States. Khan is the primary organizer of the scheme, which he operates under the alias of his co-conspirator Petit-Homme. Khan communicates with banks, payment processors and others, including his co-conspirators and co-defendants, through various methods, including the email address melindapetithomme@gmail.com (the "MPH Scheme Email Account").

11. Defendant Petit-Homme is a citizen of Canada and a resident of the State of Florida. In connection with the matters alleged herein, Petit-Homme has transacted business in this District and throughout the United States. Florida's Department of State, Division of Corporations lists Petit-Homme as the "DPST," meaning the Director President Secretary Treasurer, of Altitude Processing. However, it is Khan who acts as the *de facto* chief executive of the company using Petit-Homme's identity as a front. In furtherance of the fraud scheme, Petit-Homme provided Khan with her identification credentials, including her driver's license, green card, and utility bills. Khan previously compensated Petit-Homme between $250 and $1,000 per week to use her identity in furtherance of the fraud. Petit-Homme has also opened bank accounts on Khan's behalf and initiated wire transfers at Khan's direction. For example, an email from November 8, 2018, shows that Khan instructed Petit-Homme to wire $46,084.37 to a Wells Fargo bank account. Another email from July 11, 2019, indicates that Khan instructed Petit-Homme to wire $12,500 to another bank account.

12. Defendant Altitude Processing, Inc. is a Florida corporation that was registered with the Florida Division of Corporations on June 26, 2017. Its principal place of business and mailing address is 4965 Southwest 12th Street, Margate, Florida 33068. Petit-Homme is listed as the incorporator and current registered agent. E-mails and other records obtained by the government reflect that a second entity under the name "Altitude Processing" was incorporated in Petit-Homme's name in Delaware in or around July of 2020. Clear Marketing Agency was listed as a d/b/a of the Delaware "Altitude Processing" entity in or about November 2020. In connection with the matters alleged herein, Altitude Processing transacts business in this District and throughout the United States.

4

13. Defendant Briley is a resident of the State of Louisiana. In connection with the matters alleged herein, Briley transacts business in this District and throughout the United States. As Altitude Processing's "broker," Briley pursues relationships with various banks and third-party payment processors, including payment processors who knowingly participate in the fraudulent scheme. Briley communicates with Khan through the MPH Scheme Email Account and addresses Khan by his "Melinda Petit-Homme" alias.

14. Defendant Christopher Foufas is a resident of the State of Florida and Chief Executive Officer of RSC and YO! Inc. (also known as "YO! Solutions"). In connection with the matters alleged herein, Foufas transacts business in this District and throughout the United States. On behalf of the scheme, Foufas has opened bank accounts for Altitude Processing to receive victims' unauthorized charges. Foufas is also involved in processing unauthorized charges to victim bank accounts and wiring the proceeds to Khan and his co-conspirators. In response to the high volume of victim complaints he receives regarding the scheme, Foufas also provides a "customer service" call center to Altitude Processing that fields victim complaints and offers refunds.

15. Defendant Brandon Hahn is a resident of the State of Florida. In connection with the matters alleged herein, Hahn transacts business in this District and throughout the United States. Hahn is the Chief Technology Officer of RSC and of YO! Solutions. Hahn is responsible for managing a "client portal" on client.runchecks.com, through which Khan and his co-conspirators upload victims' payment information. Hahn is also involved in processing unauthorized charges and tracking victim refunds.

16. RSC LLC ("RSC") is a limited liability company registered in the State of Delaware that was formed in or around January 2017. RSC is also registered in Florida as RSC of Florida LLC

and in Indiana as RSC of Indiana LLC. RSC also uses the names YO! Solutions and RSC First Party. In connection with the matters alleged herein, RSC transacts business in this District and throughout the United States.

17. YO! Inc. is incorporated in the State of Nevada and registered as a foreign corporation authorized to do business in Florida. In connection with the matters alleged herein, YO! Inc. transacts business in this District and throughout the United States.

**DEFENDANTS' ONGOING FRAUD SCHEME**

18. Since at least 2017, Khan and his co-conspirators have operated a bank and wire fraud scheme that obtains individuals' and small businesses' banking information without authorization and uses payment processors to charge unauthorized debits to their accounts. Khan previously operated the scheme through Diligent Management, Inc. d/b/a "411 Listings," which was voluntarily dissolved in or about July 2020, according to Florida Division of Corporation records. That same month Khan (under the alias of Melinda Petit-Homme) and Briley agreed that "a complete rebrand [was] very much needed" to separate any affiliation with the prior entity. Khan then formed or directed the formation of Altitude Processing, which does business as "Clear Marketing Agency," under the Melinda Petit-Homme alias.

19. After obtaining victims' banking information, Khan, through the MPH Scheme Email Account, and his co-conspirator payment processors, including RSC, generally use remotely created checks (or "RCCs") to perpetuate the fraud. A remotely created check is a check created by a third party using the account holder's name, address, and bank account information. Unlike an ordinary check, a remotely created check is not signed by the account holder and instead includes a statement to the effect that the account owner authorized the check. Defendants cause fraudulent remotely created checks to be deposited without having received the victims' approval

and without their knowledge. More recently, Defendants have also perpetuated the fraud through the use of ACH debits on victims' accounts.

20. The victims' bank accounts debited by Defendants are generally held at federally insured banks, which are unaware that the debits are unauthorized at the time they are made. The bank accounts that Defendants use to collect victims' unauthorized payments are also generally held at federally insured banks.

21. Since at least 2017, Khan (using the Melinda Petit-Homme alias) has partnered with Briley to seek out partnerships with banks and payment processors. In an email dated September 7, 2017, Briley encouraged Khan to use a potential payment processor because the processor "can hide your business well, and will set up 3 accounts to process you, spreading the transactions evenly" to lower the risk of being shut down due to complaints. Earlier in the scheme, Briley also sought out payment processors who were willing to conduct so-called "micro transactions" to artificially lower Khan's unauthorized return rate and evade detection by banks. For example, in an email dated September 8, 2017, Briley emailed the MPH Scheme Email Account to suggest a new payment processor who "likes your business" and "can also use micros to help…" In another email dated June 20, 2017, Briley encouraged Khan to increase the volume of fraudulent transactions, "as much as you can [because] the processor will just keep offsetting" with micro transactions. As explained in more detail below, micro transactions are low-dollar sham transactions designed to artificially lower the apparent rate of returned or rejected transactions.

22. Since at least October 2021, Khan (using the Melinda Petit-Homme alias) has partnered with Foufas and Hahn through their businesses RSC and YO! Solutions. In furtherance of the scheme, Foufas created bank accounts to receive unauthorized payments from victims' accounts.

7

This includes accounts at Bank of Oklahoma, North American Banking Company, and American Commercial Bank & Trust. At Khan's direction, Foufas and Hahn, through RSC, submit unauthorized remotely created checks to those bank accounts and wire the proceeds to Altitude Processing. RSC also operates a "customer service" line for Altitude Processing that fields complaints and provides refunds to victims of the scheme in an attempt to head off, and thereby decrease, the number of complaints to the victims' banks. In a particularly revealing email thread from March 30, 2022, Foufas explained to Khan that "This [customer] service saves you… I was able to drop your rate because of this service. This is an upcharge that I get to help all the merchants lower their unauthorized returns. It also limits complaints." The customer service line receives complaints about unauthorized charges on a near-daily basis, and Foufas passes them along to Briley and Khan via the MPH Scheme Email Account.

### Defendants Lie to Small Business Victims About Providing Online Marketing Services and Refunds

23. Khan and his co-conspirators engage in a variety of deceptive tactics to achieve their goal of processing unauthorized remotely created checks without interference or detection, such as telling lies about the services they purportedly provide in exchange for the charges, whether they have authorization to charge victims' accounts, and—upon receiving complaints—whether they will issue full refunds.

24. First, Defendants obtain the banking information of victims, which are primarily small businesses, and without their knowledge or consent initiate monthly charges of $99 to their bank accounts. If anyone inquires, Defendants generally falsely respond that the charges are for online marketing services.

25. The experiences of T.F. and S.G., described in the Postal Inspector Christine Reins-Jarin Agent Declaration attached hereto, are illustrative of the experiences of the fraud scheme's many

victims. T.F., the owner of a small business in Michigan, discovered that Altitude Processing had made a series of unauthorized charges against her business bank account, allegedly for online business listings. T.F.'s business had never contracted with Altitude Processing and T.F. does not know how Altitude Processing obtained her company's bank information. T.F. called Altitude Processing about the fraudulent charges on two separate occasions. On the second occasion, she was told that she would be refunded for six months' worth of charges (or about $600), but she never received the promised refund. T.F. filed a complaint with the Federal Trade Commission ("FTC") about the unauthorized transactions. She subsequently received a refund from Altitude Processing for $99. She never received any additional refunds.

26. S.G. described a similar experience with Defendants' fraudulent scheme. S.G. learned from his bookkeeper that two companies, including Altitude Processing, had been charging his business bank account $99 per month for several months. S.G.'s company had never done business with Altitude Processing, and he did not know how Altitude Processing obtained his company's bank information. As a result of the fraudulent charges, S.G. closed his bank account. Over 100 victims have reported being defrauded by Defendants in a similar manner, as reflected in consumer complaints compiled by the FTC. These complaints consistently describe consumers discovering unauthorized debits against their bank accounts, nominally for services that the consumers neither requested nor received.

### Defendants Provide False Proof of Authorization ("POA") Forms to Small Business Victims' Banks

27. When questioned by small business victims' banks about the unauthorized charges, Khan (using the Melinda Petit-Homme alias) typically lies and states that the victim consumer signed up for Clear Marketing Agency's online services or authorized Altitude Processing to initiate payments from the victim's account. Defendant Khan also has provided fabricated Proof of

9

Authorization ("POA") documents to banks, which falsely state that the victim has authorized the charges. For example, in an email from July 13, 2022, Khan provided dozens of fabricated POAs to Foufas so that he could provide them to banks after victims reported unauthorized charges to their accounts. The Defendants use these measures to deceive federally insured banks into continuing to process their unauthorized debits against victims' accounts.

### Defendants Maintain a Customer Service Call Center and Website to Falsely Make Their Business Seem Legitimate

28. Earlier in the scheme, Khan, through the MPH Scheme Email Account, expressed resistance to communicating with individuals about charges to their accounts. For example, in an email dated August 24, 2017, Khan rejected a proposal to confirm transactions with customers (who had not, in fact, authorized the charges), insisting that "calling clients to verify the payment will make clients cancel the order."

29. However, Khan and his co-conspirators more recently have operated a customer service call center to field questions and complaints from victims who actively reach out after being charged by Altitude Processing without authorization. When victims inquire as to the basis for the charges, they are told that the unauthorized debit entries and remotely created checks are authorized subscription fees for Clear Marketing Agency's internet marketing services.

30. A primary purpose of the customer service call center is to attempt to dissuade consumers from reporting the unauthorized debits. In some instances, Khan and RSC agree to refund customers who call to complain about unauthorized charges. For example, an email from January 7, 2022 indicated that a representative from Business RPF called to dispute a $99 charge from Altitude Processing, stating that the charge was unauthorized and asking for a stop payment for all charges from this merchant. RSC forwarded the complaint to Khan and stated that it would issue a refund of $99. By issuing refunds, or at least promising to do so, Defendants

endeavor to prevent additional or escalating complaints about the charges, which could jeopardize the ongoing scheme.

31. Although call center representatives promise victims that they will cease making the unauthorized charges and issue refunds, they often fail to do so. Instead, Defendants often keep the stolen proceeds and continue to make unauthorized charges against the victims' bank accounts. For example, an email from December 17, 2021, shows that RSC informed Khan that a representative from Business TFG had called to request a refund for five separate unauthorized $99 transactions. According to the email, the representative had been trying to reach Altitude Processing since May 2021, but it kept hanging up on her and continuing to charge her business's account. At one point, Altitude Processing promised to refund her account, but never did so. After Foufas began offering his own "customer services" to Altitude Processing, Khan expressed irritation regarding RSC's issuance of refunds, complaining in one November 2022 email that the refunds and the fees RSC charges to issue refunds "has ate up half our revenue."

32. Despite receiving complaints about unauthorized transactions on a regular basis, Foufas, his company RSC, which also currently maintains a customer service line on behalf of Altitude Processing, and Hahn continue to process its payments. For example, Foufas emailed Khan on March 14, 2022, to ask why Altitude Processing had continued to make unauthorized debits against a victim after they had complained that the charges were unauthorized. Khan replied that they "never stopped debiting the client" and "the transaction was moved to the other processing account… Keep in mind we don't put all our business in one place!" In another email dated January 4, 2022, an RSC employee informs Foufas and Hahn that a victim reported unauthorized debits by Altitude Processing and "refused to contact merchant because she was given the same run around back in March of 2020 and never received her refund that was promised…" Finally,

in a particularly incriminating email exchange from July 25, 2022, an RSC employee emailed Foufas a series of victim complaints about Altitude Processing that he had found online. The employee wrote, "This is what I found" – implying that Foufas had specifically asked the employee to investigate complaints against Altitude Processing. Despite the constant complaints RSC received through its "customer service" center, Foufas and Hahn continued to process payments for the scheme.

33. In addition to the customer service line, Khan and his co-conspirators also maintain a bogus website for Clear Marketing Agency (clearmarketingagency.com), which falsely claims that Clear Marketing Agency offers internet marketing services to educational institutions. The website includes a sham online "sign up" option and promises that those who sign up for Clear Marketing Agency's services will "enjoy new students." The name Clear Marketing Agency and its associated website appear to be used for the purpose of offering a plausible explanation for the business activities of Altitude Processing to non-co-conspirator payment processors and banks in their due diligence efforts.

34. Despite the representations on the website, most victims of the scheme are not educational institutions and have no need for "new students." Instead, numerous construction firms, restaurants, landscaping companies, and other small businesses that never sought out services from Clear Marketing Agency have been victimized by Defendants' fraud scheme.

### Defendants Have Used Micro Transactions to Hide the Fraudulent Nature Of Their Businesses From Their Own Banks

35. Because they are unauthorized and fraudulent, Defendants' debits against victims' accounts are subject to unusually high "return" rates. A "return"—also known as a "chargeback"—refers to a transaction that is refused or reversed by an account holder's bank. This may occur at the request of the account holder, or for other reasons, including because the

bank account information was inaccurate or the account had insufficient funds. Many of Defendants' debits against victims' accounts are returned as "unauthorized" after being reported by a victim.

36. If a return occurs after funds have been transferred into a customer's account and the customer has already withdrawn the funds, the customer's bank is at risk of having to cover the cost of the return. In some instances, customers' banks bear all or a portion of the loss on behalf of the customers. Here, this means that the banks used by Defendants to receive authorized funds from victims may bear losses when victims seek refunds.

37. Additionally, high return rates are widely recognized as a potential indicator that a customer who initiated the debit is engaging in illegal, fraudulent, or unauthorized transactions. Accounts with high return rates risk being closed by financial institutions.

38. Khan and Briley recognize that the high return rates on their unauthorized debits threaten their scheme, because high return rates increase the risk that the scheme's accounts will be suspended and increase the risk the fraud will be detected. In a January 2022 email to the MPH Scheme Email Account titled "Wtf 50% return rate," for example, Briley asked Khan, "Why Is your business so dirty!"

39. Earlier in the scheme, to avoid the risk of detection or suspension of their bank accounts, Khan and others manipulated the return rates from the unauthorized charges to circumvent return rate monitoring. To do so, they conducted numerous, sham "micro transactions," which artificially depressed the return rates associated with Defendants' accounts. These sham micro transactions are low-dollar debits that Defendants cause another entity to charge against bank accounts that they control.

40. As early as 2017, Khan, through Altitude Processing, and Briley partnered with payment processors that conducted micro transactions to lower the overall unauthorized return rate.

41. In an email from October 2021, Khan (using the Melinda Petit-Homme alias) explained to Briley that he purchases micro transactions from another partner in order to "lower my overall returns!"

42. Unlike their unauthorized debits against consumer accounts, Defendants can be confident that their "micro transactions" will not be returned because they are charged against their co-conspirators' bank accounts.

43. Using micro transactions, Defendants have misled various federally insured banks and non-defendant payment processors into continuing to process unauthorized debits against victims' accounts. Through micro transactions, Defendants have deceived banks and non-defendant payment processors into unwittingly facilitating their fraud scheme.

## DEFENDANTS' KNOWLEDGE OF FRAUD

44. As explained above, all Defendants have knowledge of and are willing and active participants in the fraudulent scheme described above. All Defendants have knowingly conspired to further the fraud scheme and have demonstrated their understanding that they are participants in a scheme to make unauthorized debits against consumer victims' bank accounts.

## HARM TO VICTIMS AND FINANCIAL INSTITUTIONS

45. Over the past six years, Defendants have stolen millions of dollars from American consumers and small business' accounts at federally insured banks and fraudulently caused federally insured banks to open and maintain accounts and thereby bear and risk losses.

46. Victims suffer financial losses from the wire and bank fraud scheme facilitated by Defendants. Those victimized by the scheme reside across the United States, including in this District.

47. Defendants are continuing to facilitate the wire and bank fraud scheme. Absent injunctive relief by this Court, Defendants' conduct will continue to cause injury to victims across the United States and victims may be denied the opportunity to obtain restitution.

48. Federally insured financial institutions are also misled into opening Defendants' bank accounts, obtaining money from victims' bank accounts, and allowing Defendants to then obtain money that is in the banks' custody under false pretenses.

49. The banks used by victims also risk, and sometimes bear, losses on behalf of their customer victims. In particular, the banks used by Defendants to charge unauthorized debits on victims' accounts risk forfeiting the amount of unauthorized funds. The scheme also deprives banks of the property rights they possess over the funds in the accounts they hold.

## COUNT I
### (18 U.S.C. § 1345 - Injunctive Relief)

50. The United States re-alleges and incorporates by reference Paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51. By reason of the conduct described herein, all Defendants have violated, are violating, and are about to violate 18 U.S.C. §§ 1343 and 1349 by conspiring to execute and executing a scheme and artifice to defraud for obtaining money by means of false or fraudulent representations with the intent to defraud, and, in so doing, using interstate and foreign wire communications.

52. By reason of the conduct described herein, all Defendants have violated, are violating, and are about to violate 18 U.S.C. §§ 1344, and 1349 by conspiring to execute and executing a

15

scheme and artifice to defraud financial institutions and by conspiring to execute and executing a scheme and artifice to obtain moneys owned by, or under the custody or control of, financial institutions, by means of false or fraudulent pretenses, representations, or promises.

53. Upon a showing that Defendants are committing, conspiring to commit, or about to commit wire fraud or bank fraud, the United States is entitled, under 18 U.S.C. § 1345, to seek a preliminary injunction and a permanent injunction restraining all future fraudulent conduct and ordering any other action that the Court deems just to prevent a continuing and substantial injury.

54. As a result of the foregoing, Defendants' conduct should be enjoined, and Defendants should be prevented from dissipating and concealing their ill-gotten gains.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, United States of America, requests of the Court the following relief:

A. That the Court issue an order, pursuant to 18 U.S.C. § 1345, pending a hearing and determination of the United States' application for a preliminary injunction, that Defendants, their agents, officers and employees, and all other persons or entities in active concert or participation with them, are temporarily restrained from:

   i. committing wire fraud, as defined by 18 U.S.C. § 1343;

   ii. committing bank fraud, as defined by 18 U.S.C. § 1344;

   iii. charging or causing others to charge unauthorized debits against bank accounts;

   iv. defrauding consumers, financial institutions, and others, in any way;

   v. incorporating or exercising control over any additional corporate entities in furtherance of the fraud scheme; and

      vi. destroying, deleting, removing, or transferring any and all records of any nature related to the Defendants' business, financial or accounting operations.

B. That the Court order that, within two (2) days from the Defendants' receipt of the temporary restraining order, the Defendants provide a copy of the temporary restraining order to each affiliate, successor, assign, employee, agent, independent contractor, and representative of the Defendants, and shall, within ten (10) days from the date of entry of the temporary restraining order, provide the United States with a sworn statement that this provision of the temporary restraining order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the temporary restraining order.

C. That the Court issue an order, pursuant to 18 U.S.C. § 1345, pending a hearing and determination of the United States' application for a preliminary injunction, freezing Altitude Processing's and RSC's assets, including any assets in bank accounts held by Altitude Processing or RSC, and any assets in bank accounts held by others "doing business as" Clear Marketing Agency, Altitude Processing, or RSC.

D. That the Court issue an order, pursuant to 18 U.S.C. § 1345, pending a hearing and determination of the United States' application for a preliminary injunction, appointing a temporary receiver over Defendants Altitude Processing and RSC.

E. That the Court issue preliminary injunctions on the same basis to the same effect.

F. That the Court issue permanent injunctions on the same basis to the same effect.

G. That the Court order such other and further relief as the Court shall deem just and proper.

Dated: November 21, 2023

Respectfully submitted,

**BRIAN M. BOYNTON**
**Principal Deputy Assistant Attorney General**

**ARUN G. RAO**
**Deputy Assistant Attorney General**

**AMANDA N. LISKAMM**
**Director, Consumer Protection Branch**

**RACHAEL L. DOUD**
**Assistant Director, Consumer Protection Branch**

*Carolyn Rice*
**CAROLYN F. RICE**
Special Florida Bar No. A5502927
**MEREDITH L. REITER**
Special Florida Bar No. A5503096
Trial Attorneys
**Department of Justice**
**Civil Division**
**Consumer Protection Branch**
450 5th Street NW
Carolyn.f.rice@usdoj.gov
Meredith.l.reiter@usdoj.gov
Telephone: 202.451.7769 (Direct)

**MARKENZY LAPOINTE**
**UNITED STATES ATTORNEY**

*James Weinkle by Carolyn Rice*
**JAMES A. WEINKLE**
**Assistant United States Attorney**
Florida Bar No. 0710891
Email: James.Weinkle@usdoj.gov
**Office of the United States Attorney**
**Southern District of Florida**
Alto Lee Adams Federal Courthouse
101 South U.S. Highway One, 3100
Fort Pierce, FL 34950
Telephone: 772.293.0945 (Direct)

**Counsel for United States of America**